EASTERLING LUMBER Co. *v.* S. W. PIERCE.

[64 South. 461.]

1. MASTER *and* SERVANT. *Abolition of fellow-servant doctrine. Statutes. Constitutionality. Construction. Equal protection of laws. Trial. Constitution 1890, section 193. Laws 1908, chapter 194. Code 1906, section 4056. Laws 1912, chapter 215. Evidence of want of skill. Ex post facto laws. Damages. Personal injury. Awards.*

Section 193 of the Constitution of 1890 providing that every employee of any railroad corporation shall have the same rights and remedies for any injuries suffered by him from the act of the corporation or its employees, as is allowed to other persons not employees, where the injury results from the negligence of a superior agent or person having the control of the injured servant, or from a fellow servant in another department of labor, or engaged on another train, and further providing that the legislature may extend the remedies provided to any other class

of employees, did not prevent the legislature from making a broader abrogation of the fellow-servant rule; therefore Laws of 1908, chapter 194, which amends Code 1906, section 4056, so as to abolish the fellow-servant rule in actions for injuries to employees of railroads and others operating trains and engines running on tracks, etc., is not invalid.

2. CONSTITUTIONAL LAW. *Construction of statutes.*
   It is the duty of the courts to construe acts of the legislature so as to uphold their constitutionality and validity, if such can reasonably be done, and any doubt relative thereto will be resolved in favor of the law.

3. CONSTITUTIONAL LAW. *Master and servant. Equal protection of law.*
   Chapter 194, Laws 1898 abolishing the fellow-servant rule in actions for injuries to employees of railroads and others using engines or cars of any kind propelled by the dangerous agencies of steam, electricity, gasoline, etc., and running on tracks, makes a reasonable and sufficient classification, and is not repugnant to the equality clause of the fourteenth amendment of the Federal Constitution because it applies only to those using such agencies operated on tracks, the classification being a legitimate one.

4. EVIDENCE OF WANT OF SKILL. *Ex post facto laws. Laws 1912, chapter 215.*
   Rules of evidence are at all times subject to modification by the legislature, and statutes, making such changes as are applicable from their passage, not only to causes of action arising thereafter, but also to actions accrued or pending at the time and hence Laws 1912, chapter 215 providing that in all actions against railroads or others using locomotives, proof that the injury was inflicted by the running of engines shall be *prima facie* evidence of want of reasonable skill and care, applies to actions originating before as well as after its enactment.

5. NEW TRIAL. *Grounds. Communications to jury.*
   The fact that the jury trying a case learned that defendant had offered a settlement is not ground for setting aside the verdict where it is not shown that the jury gained the information through corrupt means.

6. DAMAGES. *Personal injuries. Award.*
   In a suit for personal injury where it is shown that plaintiff at the time of the injury was twenty-nine years old, in strong health, and earning seventy-five dollars per month, and his foot

and ankle were crushed and bones in his leg were broken, and that he suffered great pain and was under treatment for about five months before his leg was amputated and he was permanently injured, a verdict for seventeen thousand five hundred dollars will not be disturbed.

Appeal from the circuit court of Covington county.

Hon. W. H. Hughes, Judge.

Suit by S. W. Pierce against the Easterling Lumber Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*T. Brady, Jr.,* and *Mayes & Mayes,* attorneys for appellant.

*Hirsch, Dent & Landau* and *E. L. Dent,* attorneys for appellee.

Argued orally by *T. Brady, Jr.,* and *Edward Mayes,* for appellant and *R. L. Dent,* for appellee.

Reed, J., delivered the opinion of the court.

Appellee obtained judgment against appellant in the sum of seventeen thousand five hundred dollars for damages from personal injury. At the time he was injured, he was employed by the appellant company as an engineer in charge of an engine which was engaged in pulling a train carrying employees of appellant company from its mill at Ora to its camp in the woods over its logging railway, a distance of about fifteen miles. The injury resulted from a head-on collision between the engine which was in charge of appellee and an engine known as the "Shay," pulling cars from the camp. Appellee charged that the collision was from negligence of several employees of appellant company. The negligence included the placing of an incompetent engineer in charge of the Shay and the failure to give proper orders as to the proper running of the trains, which resulted in their

unexpected meeting. Appellee's injury was serious, and resulted in the loss of a leg.

Appellant assigns as error the refusal by the court to give instructions to the effect that if the jury believed from the evidence in the case that the injury to appellee was caused by the negligence of a fellow servant, then appellee could not recover. Counsel for appellant in their brief make this assignment of error in the following words: "The court erred in denying the appellant the defense that the injury of appellee was caused by the negligence of a fellow servant."

This brings to our consideration the law of Mississippi abolishing the fellow-servant rule among certain employees.

It is asserted by appellant that chapter 194 of the acts of 1908 is unconstitutional for two reasons: "(1) It violates section 193 of the Mississippi Constitution; (2) it violates the equality clause of the fourteenth amendment to the Constitution of the United States."

The title to chapter 194 of the Acts of 1908 shows it to be an act to amend section 4056 of the Code of 1906, so as to abolish the fellow-servant rule in actions for injuries to employees of railroads and other corporations using engines, etc., propelled by the dangerous agencies of steam, electricity, etc.

We quote the first section of the chapter:

"Every employee of a railroad corporation, and all other corporations and individuals, using engines, locomotives or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, electricity, gas, gasoline or lever power, and running on tracks, shall have the same rights and remedies for an injury suffered by him from the act or omission of such railroad corporation or others, or their employees, as are allowed by law to other persons not employed.

Knowledge by any employee injured of the defective or unsafe character or condition of any machinery, ways

or appliances, or of the improper loading of cars, shall not be a defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars or engines voluntarily operated by them. When death ensues from an injury to an employee, an action may be brought in the name of the widow of such employee for the death of the husband, or by the husband for the death of his wife, or by a parent for the death of a child, or in the name of a child for the death of an only parent, for such damage as may be suffered by them respectively by reason of such death, the damages to be for the use of such widow, husband, parent or child, except that in case the widow should have children, the damages shall be distributed as personal property of the husband. The legal or personal representatives of the person injured shall have the same rights and remedies as are allowed by law to such representatives of other persons. In every such action the jury may give such damages as shall be fair and just, with reference to the injury resulting from such death to the person suing. Any contract or agreement expressed or implied, made by an employee to waive the benefit of this section shall be null and void, and this section shall not deprive an employee of a person, natural or artificial, or the legal or personal representatives of such person, of any right or remedy they now have at law."

Section 193 of the Mississippi Constitution reads: "Every employee of any railroad corporation shall have the same right and remedies for any injury suffered by him from the act or omission of said corporation or its employees, as are allowed by law to other persons not employees where the injury results from the negligence of a superior agent or officer, or of a person having the right to control, or direct the services of the party injured, and also when the injury results from the negligence of a fellow-servant engaged in another department of labor from that of the party injured, or of a fellow

servant on another train of cars, or one engaged about
a different piece of work.  Knowledge by any employee
injured, of the defective or unsafe character or condition
of any machinery, ways, or appliances, shall be no de-
fense to an action for injury caused thereby, except as to
conductors or engineers in charge of dangerous or unsafe
cars, or engines voluntarily operated by them.  Where
death ensues from any injury to employees, the legal or
personal representatives of the person injured shall have
the same right and remedies as are allowed by law to
such representatives of other persons  Any contract or
agreement, express or implied, made by any employee to
waive the benefit of this section shall be null and void;
and this section shall not be construed to deprive any
employee of a corporation or his legal or personal rep-
resentative of any right or remedy that he now has by
the law of the land.  The legislature may extend the
remedies herein provided for to any other class of em-
ployees."

Section 193 of the Constitution of 1890 has been up-
held as not violative of the Constitution of the United
States.

It has been held that section 193 applies only to rail-
road corporations engaged in the business of common
carrier, or those denominated "commercial railroad com-
panies," and that it does not apply to railroads owned
and operated as an adjunct to the main business of their
owners, such as construction company roads, roads used
in connection with mines and lumber corporations and
logging roads.  *Construction Co.* v. *Heflin,* 88 Miss. 314,
42 So. 174.  The railroad in the case at bar is a logging
road.

It will be noticed that the final sentence of section 193
provides for the extension of the remedies therein in the
following language:  "The legislature may extend the
remedies herein provided for to any other class of em-
ployees."  It is not argued by counsel for appellant

that the legislature could not extend the remedies to employees of logging roads. It is conceded that this may be done. It is claimed that the words were at once a grant and a limitation; that by necessary inference the limitation amounted to a denial to the legislature of a power to grant any remedies curtailing the fellow-servant rule other than those provided in the section. It is true that by the statute (chapter 194 of the Acts of 1908) there is a broader and fuller statement of the abrogation of the fellow-servant rule than that contained in the section of the Constitution. The makers of the Constitution, by section 193, provided for the abrogation of the fellow-servant doctrine to a certain extent.

It was said by Chief Justice WHITFIELD in the case of *Ballard* v. *Oil Co.*, 81 Miss. 507, 34 So. 533, 62 L. R. A. 407, 95 Am. St. Rep. 476, that it was the purpose of the framers of the Constitution to authorize legislation to abolish the fellow-servant rule in the case of railroad corporations whose business was known to be inherently dangerous in so far as such litigation would be in accord with the principles announced by the decisions of the United States supreme court. He further stated in his opinion in that case that "the purpose of the last clause of section 193 was to extend the remedies therein provided for to any other class of employees of corporations or persons whose business was, like that of railroads, inherently dangerous, or whose business was so different from the business of other corporations or persons as to furnish the basis for a classification of the business of such corporations, or persons, under which their employees might be permitted to sue without reference to the fellow-servant rule, while the employees of corporations, or persons not having that sort of business, could not so sue; in other words, to permit a classification based on 'some difference bearing a reasonable and just relation to the act in respect to which the classification is proposed.' . . . It is not therefore to be supposed

that the last clause of the section meant any more than that there might be other classifications of the employees of corporations or individual persons based also on some distinguishing difference in the nature of the business."·

After making the provision referred to and treating the subject in hand, the Constitution framers added at the end, and from its appearance, as an afterthought, the final sentence: "The legislature may extend the remedies herein provided for to any other class of employees." It will be noticed that the legislature is not enjoined to extend such remedies. The statement carries with it the thought that it was made as a suggestion to the legislature to enact laws for the purpose of abolishing the fellow-servant rule in other classes of employees. We cannot believe from an entire consideration of the section, and in view of its evident purpose, that the final sentence was intended as a restriction. In truth, we do not see that it is necessary to regard it as a grant in order that the legislature should be able to enact a statute to abolish the fellow-servant rule in proper classes of employees. The legislature is intrusted with the general authority to make laws at discretion, unless there is a clear constitutional prohibition. Judge COOLEY, in his Constitutional Limitations, p. 87, says: "In the enactment of laws the legislature must act upon its own reasons; mixed motives of power, justice, and policy influence its action; and it is always justifiable and laudable to lean against a violation of the Constitution."

In the case of *Hart* v. *State,* 87 Miss. 171, 39 So. 523, 112 Am. St. Rep. 437, it is stated by Judge TRULY, in delivering the opinion of the court, that: "It is the universally accepted rule of statutory construction that no act of the legislature will be condemned as violative of or repugnant to the fundamental law unless it manifestly be in palpable conflict with some plain provision of the state or Federal Constitution; and, as such conflict is not to be implied, it is the duty of the court, whenever pos-

sible, to give every expression of legislative will such construction as will enable the statute to have effect.''

In *Burnham* v. *Sumner*, 50 Miss. 517, Chief Justice Peyton said: ''Whenever an act of the legislature can be so construed and applied as to avoid conflict with the Constitution and give it the force of law, such construction will be adopted by the courts. An inquiry into the validity of an act on the ground that it is unconstitutional is an inquiry whether the will of the representative as expressed in the law is or is not in conflict with the will of the people as expressed in the Constitution. And unless it be clear that the legislature has transcended its authority, the courts will not interfere.'' Acts of the legislature constitutionally organized are presumed to be constitutional, and it is only where they manifestly infringe some of the provisions of the Constitution or violate the rights of the citizen that their operation and effect can be impeded by the judicial power.''

In *Railroad* v. *Crawford*, 99 Miss. 697, 55 So. 596, it was held that: ''All doubts are resolved in favor of the constitutionality of a statute; if there is any reasonable doubt of its constitutionality, it must be upheld by the court.''

It is well settled in this state that it is the duty of the court to construe acts of the legislature so as to uphold their constitutionality and validity, if such can be reasonably done, and any doubts relative thereto will be resolved in favor of the law. All presumptions are in favor of the constitutionality of the act because the legislature, before passing the law, is required to consider the same, and, before acting upon it, determine as to its constitutionality.

However, we note that statutes abolishing the fellow-servant doctrine as to railroads and other proper classes of employees have been held by the supreme court of the United States as constitutional. *Tullis* v. *Lake Erie W. R. Co.*, 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192; *Minn.*

*Iron Co.* v. *Kline,* 199 U. S. 593, 26 Sup. Ct. 159, 50 L. Ed. 322.

So the legislature of Mississippi, without any provision in the state Constitution, such as section 193, could have enacted a law abrogating the fellow-servant rule in a class composed of railroad employees and such other proper classes. Section 193 is, in itself, only the enactment of a law on the subject of the fellow-servant doctrine. We do not see in it any purpose to prohibit the legislature from enacting statutes on the same subject. Such laws are reasonable in their effect. When applied to proper classifications they have been repeatedly upheld by courts.

We conclude that there is no limitation in the Constitution of Mississippi on the power of the legislature to enact laws abolishing the fellow-servant rule in proper classes. The final sentence in section 193 of the Constitution is not a limitation which denied to the legislature the power to pass the act. Chapter 194 of the Laws of 1908.

Now as to the contention that chapter 194 violates the equality clause of the fourteenth amendment of the Constitution of the United States: Counsel for appellant contend that this violation is accomplished by the inclusion of the words "and running on tracks." We cannot agree with counsel that this is so. It has been held that section 193 of the Constitution excludes all railroads except commercial railroads, or those engaged in the business of common carrier. We see in the act of the legislature the purpose to extend the remedy provided by the abrogation of the fellow-servant doctrine to all employees of all railroad corporations, including the commercial railroads, and including also all other railroads, such as logging railroads and those connected with lumber and other enterprises using such engines, locomotives, and cars "running on tracks." We understand the words "running on tracks" to define such engines, locomotives,

and cars propelled by the several dangerous agencies named as are used in all of the different kinds of railways. The statute was meant in its broad expression to exclude no kind of railways in Mississippi. The statute provides that the remedies extend to all employees using engines, locomotives, or cars owned and operated by railroad corporations and all other corporations and individuals. In short, the class made by the statute is all employees using such engines, locomotives, and cars of all kinds and descriptions propelled by the dangerous agencies specified and running on tracks, that is, on a defined way such as used by railroads. We deem this a reasonable classification which applies equally to all in the same situation.

In the case of *Aluminum Co.* v. *Ramsey,* 222 U. S. 251, 32 Sup. Ct. 76, 56 L. Ed. 185, the constitutionality of a statute in Arkansas abolishing the fellow-servant rule as to corporations operating railroads in that state was upheld. The court, speaking through Justice McKenna, said: "The statute constitutes a class of corporations operating railroads, and under the cases we have cited the classification is valid, there being equality within the class." We find the Arkansas statute as broad in its terms as the Mississippi statute now under consideration. This statute abolished the doctrine of common employment as regards railroad companies, all corporations of every kind, and every company, whether incorporated or not, engaged in the mining of coal.

The supreme court of Florida, in passing upon an act in that state, which provides that the facts that the injured person is an employee of a railroad company, and damages were caused by negligence of another employee, shall be no bar to recovery, and in upholding the statute as constitutional against the objection of inequality, decided that "it is within the province of the legislature to modify the common-law rules regulating employers' liability, and a wide discretion is accorded it in deter-

mining the subjects as well as the character and extent of regulations designed to promote the general welfare; the limitations imposed by the Federal Constitution being designed merely to prevent arbitrary uses of state authority." *Taylor* v. *Prairie Pebble Phosphate Co.* (1911), 61 Fla. 455, 54 So. 904.

Chief Justice WHITE, in delivering the opinion of the court, in the case of *Railroad Co.* v. *Melton,* 218 U. S. 36, 30 Sup. Ct. 676, 54 L. Ed. 921, said: "That the fourteenth amendment was not intended to and does not strip the states of the power to exert their lawful police authority is settled, and requires no reference to authorities. And it is equally settled—as we shall hereafter take occasion to show—as the essential result of the elementary doctrine that the equal protection of the law clause does not restrain the normal exercise of governmental power, but only abuse in the exertion of such authority, therefore that clause is not offended against simply because as the result of the exercise of the power to classify some inequality may be occasioned. That is to say, as the power to classify is not taken away by the operation of the equal protection of the law clause, a wide scope of legislative discretion may be exerted in classifying without conflicting with the constitutional prohibition. It is beyond doubt foreclosed that the Indiana statute does not offend against the equal protection clause of the fourteenth amendment, because it subjects railroad employees to a different rule as to the doctrine of fellow servant from that which prevails as to other employments in that state" (citing *Tullis* v. *Lake Erie W. R. Co.,* 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192; *Pittsburg, C., C. & St. L. R. Co.* v. *Ross,* 212 U. S. 560, 29 Sup. Ct. 688, 53 L. Ed. 652).

Where there are reasonable reasons for doing so certain industries or classes of persons may be selected out for special regulation, or for the enjoyment of special privileges. Willoughby on the Constitution, section 484.

The beneficent provisions of the fourteenth amendment can hardly secure for all persons in this nation the same remedies and the benefits of the same laws. It is enough if such are secured for all those in a class reasonably and properly made.

Peculiar duties, services, and risks rest upon the employees of the corporations and individuals named in the statute. Their wants and conditions, in the employment, are alike. They are properly classified.

We fully appreciate the force of the argument made by counsel for appellant that employees at work upon traction engines or motor cars not running on tracks should be included. It may be that in the future, when we have new, solid, and stable highways throughout the rural districts, and when the streets in the towns are all paved, that traction engines and motor cars shall be so generally used as to justify the formation of a class to receive the benefits from the abrogation by the legislature of the fellow-servant rule. At present, and under the conditions now existing, we cannot see that the prospect of the advisability at some time in the future for such classification can in any manner interfere to declare unreasonable and unequal the formation of the present class for the benefits of such provision.

It is clear to us that chapter 194 of the Act of 1908 makes a reasonable and sufficient classification, and is not repugnant to the equality clause of the fourteenth amendment.

It is further assigned as error that "the court erred in instructing the jury that if the appellee was injured by running an engine or locomotive, the burden of proof was upon appellant to prove, by a preponderance of the credible evidence, that its negligence did not cause the injury to appellee." This calls in question the operation of the provisions of chapter 215 of the Laws of 1912 that in all actions against railroad corporations, etc., the proof of injury inflicted by the running of engines, loco-

motives, or cars shall be *prima facie* evidence of the want of reasonable skill and care, etc. Appellee was injured on October 16, 1911, before the *prima facie* statute (chapter 215) was enacted. Appellant contends that because the law was passed after the injury, it should not apply in the trial of the case. The law was in effect at the time the case was tried in July, 1912. We understand statutes like chapter 215 provide a rule of evidence. Touching the question of the retrospective construction of statutes under the subject of Statutes Relating to Remedy and Procedure, we find in 36 Cyc., p. 1213, the following statement of the law: "The presumption against the retrospective construction of statute is founded on the principle that they should not be given such a construction as will make them unconstitutional or unjust, and therefore, as a general rule, does not apply to statutes that relate merely to remedies and modes of procedure." In 36 Cyc., p. 1217, is the following: "Rules of evidence are at all times subject to modification by the legislature and statutes, making such changes as are applicable from their passage, not only to causes of action arising thereafter, but also to actions accrued or pending at the time." It was decided in *Carothers* v. *Hurley*, 41 Miss. 71, that: "The legislature has the power to change the rules of evidence, and to adopt new rules, so as to affect past and future rights of action."

In *Belcher* v. *Mhoon*, 47 Miss. 613, it was decided that: "It is competent for the legislature to enact laws in respect to testimony, and to shift the burden of proof by pronouncing that, if certain facts exist, the presumption shall be that certain other things connected with them were done."

The statute in the case at bar dealt only with the rule of evidence, and not with a substantive right. The court did not err in granting the instruction.

We note and have carefully considered the argument by counsel for appellant that the court erred in refusing

to vacate and set aside the judgment rendered against appellant because the jury had received information that appellant's attorney had offered appellee's attorney a certain sum in settlement of the case, and we note the testimony taken upon the motion for new trial. A jury should be kept free from all outside influence, and the trial judge should use due care to see that this is accomplished. In this case, however, we cannot see that the judge erred in refusing to grant a new trial under the facts presented to him. He stated in overruling the motion for a new trial that the testimony failed "to show that any of the jurors are corrupted or influenced by any outside influence whatever." It is not shown that any corrupt means were used in conveying such information to the jury.

We cannot say that the verdict in this case is excessive. At the time he was injured appellee was twenty-nine years old, in strong health, and earning seventy-five dollars per month. His foot and ankle were crushed, and bones in his leg were broken. He suffered great pain, and was under treatment for about five months before his leg was amputated. He is permanently injured. It was the province of the jury to determine the amount of his damages from his suffering and permanent disability. While the verdict may seem large, still we cannot see, on the facts as presented in this case, that it is not warranted.

We do not find any reversible error in this case.

*Affirmed.*