## F. J. MYERS et al. v. LAMB-FISH LUMBER COMPANY.

### [64 South. 727.]

1. MASTER AND SERVANT. *Questions for the jury. Safe place to work. Death. Sufficiency of evidence. Cause of injury. Abolition of fellow-servant rule. Laws 1908, chapter 194. Application of statute. Laws 1912, chapter 215. Retroactive operation. Rule of evidence.*

   In an action for personal injury against a railroad the question as to whether or not the roadbed was safe is a question for the jury.

2. DEATH. *Sufficiency of evidence. Cause of injury.*

   Under the evidence in this case it is *held* that the death of plaintiff's intestate was caused by the collision in the operation of defendant's cars.

3. LAWS 1908, CHAPTER 194. *Abolition of fellow-servant rule. Application of statute.*

   The exception in Laws 1908, chapter 194 which provides that an employee's knowledge of the unsafe condition of any ways or appliances, or of the improper loading of cars, shall not be a defense to an action for injury therefrom, but excepting conductors and engineers voluntarily in charge of dangerous, or unsafe cars, has no application in a case where the cars are not defective, but the danger arose from the moving and coupling cars whose draw heads and couplers were of different heights upon a track which was soft and sodden and would sink under the weight of the cars.

4. STATUTE. *Retroactive operation. Rules of evidence. Laws 1912, chapter 215.*

   Laws 1912, chapter 215 providing that proof of injury inflicted by the running of engines, locomotives, or cars shall be *prima facie* evidence of the want of reasonable skill and care provides only a rule of evidence and does not deal with substantial rights, and is applicable in the trial of all cases after its enactment.

APPEAL from circuit court of Tallahatchie county.
HON. N. A. TAYLOR, Judge.

Suit by E. F. Myers and others against the Lamb-Fish Lumber Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Wells, May & Sanders* and *C. E. Harris,* for appellants.

We maintain that Earl Myers was not the conductor of the log train; that if he was the conductor, the danger incident to the use of the log car in connection with the coal car was not a risk assumed by him within the meaning of the exception contained in Acts of 1908, partially abolishing the fellow-servant rule and the rule of assumption of risk. But our main contention is, that whether right or wrong on the first proposition, the failure of the appellee to furnish a safe track upon which to operate the log train was a breach of duty to the deceased, danger of injury from which was not assumed by him.

Earl Myers was not a conductor within the meaning of exception contained in chapter 194, Laws 1908. We take the position that the term "conductor," as employed in this language of the said act, except as to conductor or engineer in charge of dangerous or unsafe cars or engines voluntarily operated by them" has no application to a brakeman on a log train. We must credit the legislature with common sense in adopting this law and with employing language in its ordinary, everyday acceptation. We all know what are the functions and duties and privileges of conductors in charge of freight and passenger trains on the commercial railroads of the country.

The conductor of an ordinary freight or passenger train is not required to look after the coupling of cars. That is a duty that devolves upon the brakeman or flagman, ordinarily.

But there is yet another reason why the facts of this case do not bring it within the exception of the act. If

we construe the act rightly, the term "dangerous and unsafe cars . . . voluntarily operated by them," means cars that are dangerous and unsafe to be used for the purpose for which they were constructed and intended to be used. The log car in use here was a perfectly good log car and suitable and sufficient for use as a log car; the coal car was a perfectly good coal car, suitable and sufficient for the use for which it was intended to be put. There was no defect in either of said cars or in their appliances or equipment. The trouble arose when the appellee undertook to make such a combination in the use of them in connection with each other as would render the operation hazardous, and which attempted use increased the dangers of the employment of the deceased.

If, therefore, Earl Myers was not a conductor, within the meaning of the statute, he did not assume the risk incident to the use of the cars in question; or if the cars were not dangerous and unsafe in the way meant by the statute, but were rendered dangerous and unsafe by the way in which appellee attempted to use them, he did not assume the risk.

If the car was not properly loaded, thereby increasing the risk of the employment, the master is liable.

The testimony shows that the log car was loaded with logs of unequal and uneven lengths, ranging from fourteen to twenty feet in length. It is also shown that the end of one of the logs extended so far beyond the end of the log car that it jammed the end of the coal car when the drawheads passed. Appellee knew what sort of track it was maintaining, and knew what kind of cars the log cars thus loaded would be coupled to at the coal chute. He knew that such couplings were difficult to make and that if the drawheads passed, as they did on this occasion, the cars would be brought close together and if any log was so loaded on the car as to extend beyond the end of the car too far, that the log would crush any brakeman who undertook to make the coupling. Knowing these

facts, it was actionable negligence for appellee to operate the car loaded in this fashion.

Unsafe track constitutes a breach of duty to furnish a safe place to work. But above and beyond every circumstance in the case, stands the gross breach of duty on the part of appellee in its failure to furnish the deceased with a safe place in which to work. And this breach of duty contributed to, if it did not wholly cause, the injury.

On the facts of this case, if one of the theories, which we anticipate will be advanced by the appellee and which is forecasted by some of the questions propounded to witnesses, be that the cause of the injury is not known, then we submit that the principle *res ipsa loquitur* applies, because at the time of the injury the deceased was discharging his duty, in broad open daylight, in what would ordinarily have been a safe and proper way to do his work, and in doing his task he was jammed between the ends of the cars, or the end of the log and the end of the coal car, where ordinarily there would have been a clear space of four feet. This cast upon appellee the burden of exculpating itself, which it failed to do.

Upon the various contentions made, we submit a few authorities. *Mathew* v. *Railroad Co.*, 93 Miss. 325; *Isbell* v. *I. C. R. R. Co.*, 25 So. 1037; *Y & M. V. R. R. Co.* v. *Scott*, 95 Miss. 43; *O'Neal* v. *Refuge Cotton Oil Co.*, 88 Miss. 617; *L. & N. R. R. Company* v. *Thomas*, 88 Miss. 600; *Railroad Company* v. *Bussey*, 82 Miss. 616; *White* v. *R. R. Co.*, 72 Miss. 12; *R. R. Co.* v. *Hicks*, 91 Miss. 352; *Neal* v. *Dulate*, 93 Miss. 201; *Finkbine Lbr. Co.* v. *Cunningham*, 101 Miss. 292.

The term "conductor," as employed in the Act of 1908, chapter 194, means one who ordinarily performs the well-understood functions of that position. See 2 Words and Phrases, p. 416, quoting *Hartford* v. *Northern Pac. R. R. Co.*, 64 N. W. 1033, 91 Wis. 374. The reasoning and analogy of that case seems quite conclusive of the question here.

*Res ipsa loquitur.* For the application of this rule, we refer the court to the leading case of *A. & V. Ry. Co.* v. *Groom,* 52 So. 703. Does the act of 1912, making proof of injury in such cases *prima facie* evidence of negligence, apply in this case?

It will be noted that the injury in this case occurred before the passage of chapter 215, Laws 1912, which act makes the proof of injury in cases of this character *prima facie* evidence of negligence, devolving upon the defendant the burden of clearly exculpating itself by the testimony. If the rule established by that act is a rule of evidence and a rule of procedure conferring no substantive or new right, then we say that it applies to this case. If, upon the other hand, the effect of that act is to confer a right of action where none existed before, and to confer substantive rights, then, of course, it would have no retroactive effect.

We shall not undertake to discuss this question, for two reasons: Primarily, because we believe that it makes no difference whatever whether the act applies to this case or not, because of our conviction that the proven facts in the case are sufficient to show that Earl Myers came to his death because of the negligent acts and omissions of his employer, the appellee. And in addition to this reason, the question involved has been discussed at length in another case pending in this court, which will be submitted in advance of this, and the determination of the question in that case will automatically become the law of this case in that particular.

*C. E. Harris,* for appellant.

The supreme court of the United States in the case of *Geo. A. Luria* v. *United States,* in an opinion filed October 20, 1913, has squarely decided that a statute "providing that proof of one fact shall constitute *prima facie* evidence of the main fact in issue, is but to enact a rule of evidence and quite within the general power of government."

And they further declare, "Nor is it a valid objection to such legislation that it is made applicable to existing causes of action as is the case here, the true rule in that regard being well stated in Cooley's Constitutional Limitations (7 Ed.), 524, in these words: "It must also be evident that a right to have one's controversies determined by existing rules of evidence is not a vested right. These rules pertain to the remedies which the state provides for its citizens; and generally in legal contemplation they neither enter into and constitute a part of any contract, nor can be regarded as being of the essence of any right which a party may seek to enforce. Like other rules affecting the remedy, they must therefore at all times be subject to modification and control by the legislature; and the changes which are enacted may lawfully be made applicable to existing causes of action, even in those states in which retrospective laws are forbidden. For the laws as changed would only prescribe rules for presenting the evidence in legal controversies in the future; and it could not therefore be called retrospective, even though some of the controversies upon which it may act were in progress before.'" *Webb* v. *Den,* 17 How. 576, 578; 15 Law Ed. 35, 26; *Hopt* v. *Utah,* 110 U. S. 574, 590; 28 Law Ed. 262, 268; 4 Sup. Ct. 202; 4 Am. Crim. Rep. 417; *Thompson* v. *Missouri,* 171 U. S. 380; 43 Law Ed. 204; 18 Sup. Ct. 922; *Reitler* v. *Harris,* 223 U. S. 437, 441; 56 Law Ed. 497, 499; 32 Sup. Ct. 248.

*Dinkins & Caldwell,* for appellee.

The proof shows that Earl Myers was a conductor. Section 4056, of Miss. Code 1906, with the amendments thereto, practically abolishes the fellow-servant rule, except as to conductors and engineers in charge of dangerous and unsafe cars and engines voluntarily operated by them. The proof clearly shows that the decedent, Earl Myers, had the direction and full control of the train

which caused the injury resulting in his death, and that his duty, as such conductor, required him to couple cars, and if this is true and the coupling was unsafe, and he was injured by reason of the unsafe coupling, the plaintiffs cannot recover in this case. *R. R.* v. *Guess,* 74 Miss. 170.

Appellants' intestate assumed the risk incident to his employment. A railroad company is not required to furnish the best appliances in use in order to protect its employees from danger, but they must be reasonably safe, and when they have provided appliances that are reasonably safe they have done all that is required of them by the law. Plaintiff's intestate understood, when he entered the service of the defendant as a conductor, and recognized the fact that he would be required to couple cars with the kind of couplings which is alleged to have caused the injury, and that the dangers in the use of such couplings were incident to his employment and were assumed by him. *Hatter* v. *R. R. Co.,* 69 Miss. 642; *R. R. Co.* v. *Bowles,* 71 Miss. 1003; 26 Cyc. 1106, 6; *Wormell* v. *M. C. R. R. Co.,* 1 Am. St. Rep. 324; *Y. & M. V. R. R. Co.* v. *Woodruff,* 98 Miss. 36.

A switchman who has been coupling cars for two months cannot recover for an injury received in coupling cars with different couplers from those on the railroad for which he works. *Kohn* v. *McNulta,* 147 U. S. 238, 37 L. Ed.

Servants are supposed to understand the ordinary dangers which pertain to the particular work which they are doing and accept those dangers. 1 Labatt on Master & Servant, sec. 239; *Hathaway* v. *Mich. C. R. Co.,* 51 Mich. 253; 47 Rep. 569; *McIntosh* v. *Mo. P. R. Co.,* 58 Mo. App. 281; *So. R. R. Co.* v. *Arnold,* 114 Ala. 183; 21 So. 954; *Toledo, W. & W. R. Co.* v. *Asbury,* 84 Ill. 429; *Kelly* v. *Abbot,* 63 Wis. 312, 53 Am. Rep. 292; *McLaren* v. *Williston,* 48 Miss. 299, 51 N. W. 373; *L. & N. R. R.* v. *Breland,* 11 So. 667; *Tuttle* v. *Detroit R. R.,* 122 U. S.

131, 30 L. Ed. 1114; 1 Labatt on Master and Servant, sec. 268; *Cumberland Tel. & Tel. Co.* v. *Cosnahan,* 62 So. 824; *Streeter* v. *Western W. S. Co.,* 254 Ill. 244, 98 N. E. 541, Ann. Cas. 1903, ch. 208.

Casual connection between the injury and negligence was not shown by appellants. *R. R. Co.* v. *Cathey,* 70 Miss. 332; *Short* v. *R. R. Co.,* 69 Miss. 848; *Billingsley* v. *I. C. R. R. Co.,* 100 Miss. 612; *Patton* v. *Texas, T. & P. R. Co.,* 179 U. S. 658, 45 L. Ed. 361; *Phoenix Printing Co.* v. *Durham,* 38 L. R. A. (N. S.) 1193; *Y. & M. V. R. R. Co.* v. *Hawkins,* 61 So. 161; *Orter* v. *American Sugar Ref. Co.,* 61 So. 653; 2 Labatt on Master and Servant, sec. 837; *Billingsley* v. *I. C. R. R. Co., supra.*

Counsel for appellants strenuously contend in their brief that the maxim *"res ipsa loquitur"* applies in this case. One of the cases relied upon, *Railway Co.* v. *Groome,* 97 Miss. 201, decides that the maxim applies between master and servant subject to such modification as necessarily results from the subsidiary rules as govern this relationship such as assumption of risks, etc. In that case it was held that it applied because the accident was caused by a defect in the walk, or platform, furnished by the master to the servant upon which to work. In the case at bar we contend that there is no proof to show that the track at the place where the accident occurred was defective or if any defect existed, it was one of the risks assumed by appellants' intestate when he accepted employment from appellee. Again, it is not shown that the defect in the track, if any there was, was the cause of the injury.

This maxim is a presumption and its essential import is that, on the facts proved, plaintiff has made out a *prima facie* case, without direct proof of negligence.

The law presumes the master has discharged his duty to furnish his servant with reasonably safe tools and appliances and, except as where provided by statute, and in cases wherein the doctrine of *res ipsa loquitur* ap-

plies, this presumption is not overcome by mere proof
of injury to the servant by reason of a defective appli-
ance. *Hope* v. *R. R. Co.,* 98 Miss. 822.

Again, all presumption must yield to the facts. The
party who affirms actionable negligence must establish
it by proof sufficient to satisfy reasonable minds. The
evidence must show more than mere probability of a neg-
ligent act. Moreover, if the injury complained of may
have resulted in one of two different ways, or from one
of two different causes, for one of which the defendant
is liable but not for the other, the plaintiff cannot re-
cover. Neither can he recover if it is just as probable
that the injury was caused by the one as the other. It
is said, ''This principle is formulated from the text-writ-
ers and numerous adjudications, and is accepted in the
law of negligence.'' It has also been repeatedly held
that, when liability depends upon carelessness or fault
of a person, or his agents, the right of recovery depends
upon the same being shown by competent evidence, and
it is incumbent upon the plaintiff to furnish evidence to
show how and why the accident occurred, some fact, or
facts by which it can be determined by the jury, and
not left entirely to conjecture, guess or random judg-
ment upon mere supposition. *C. & O. R. Co.* v. *Heath,*
103 Va. 66; 48 S. E. 508; *C. & O. R. Co.* v. *Sparrow,* 98
Va. 630, 37 S. E. 302; *Norfolk & W. R. Co.* v. *Cromer,* 99
Va. 763, 43 S. E. 54.

If it is just as probable from the evidence that the in-
jury was the result of one cause as another, the plain-
tiff cannot recover. *Grant* v. *Pennsylvania & N. Y. C.
& H. R. R. Co.,* 133 N. Y. 657, 31 N. E. 20 and *Learles* v.
*Manhattan R. Co.,* 101 N. Y. 661, 5 N. E. 66; *Louisville
Gas Co.* v. *Kaufman,* 105 Ky. 131, 48 S. W. 439; Thomp-
son on Negligence, page 364; 2 Labatt on Master and
Servant, sec. 836.

The act of 1912 making proof of injury in such cases
*prima facie* evidence of negligence does not apply in this
case.

Counsel for appellants, in their brief, state chapter 215, Laws 1912, will doubtless be passed upon by this court before this case is reached, and we cannot gather from the argument whether or not they contend that this act has a retrospective operation and, as there is always uncertainty as to when a case on the docket in the supreme court of this state will be submitted, it may be that the case at bar will be the first case raising the question of the retrospective effect of this act to be considered by the court, and for this reason we will submit the following observations and authorities which were compiled by us to meet the contention of counsel who represented the appellants in the court below. The trial judge held that this act was not retroactive in its effect, sustaining our contention, although we understand that the passage of this act was procured by counsel representing the appellants in the trial court for the very purpose of affecting the rights of litigants in the case at bar.

"A statute is never to be construed against the plain and obvious dictates of reason. The very essence of the law is a rule for future cases. A statute ought never to receive such a construction (giving it a retroactive effect) if it be susceptible of any other and the statute before us can have a reasonable object and full operation without it. We are to presume out of respect to the lawgiver that the statute is not meant to act retrospectively and if we call to our attention the general sense of mankind on the subject of retrospective laws, it will afford us the best reason to conclude that the legislature did not intend in this case to set so pernicious a precedent. It is a principle in the English Common Law, as ancient as the law itself, that a statute, even of its omnipotent parliament, is not to have a retrospective effect." *Dash* v. *Van Kleck,* 6 Am. Dec. 308.

The above quotation is from the opinion of Kent, C. J., in the above case, and which is the leading case on retrospective laws, and the ancient cases are reviewed in this opinion by him in a masterly manner.

In *Davis* v. *Minor,* 1 Howard, 183, SHARKEY, C. J., reviews and discusses the difference between remedial laws, or laws that affect a remedy, and those which affect a right, and holds that the same rule governs in both cases, or that any law affecting a remedy will also affect a right and that a defense may become a vested right, and that a law will not be permitted to act retrospectively on a defense any more than on a right.

The power of the legislature to give retroactive operation to some laws is conceded, but it should declare its purpose in plain and unmistakable language. *People* v. *O'Brien,* 7 A. S. R. 711; *Lane's Appeal,* 14 Am. St. Rep. 940 and note; *Chicago R. R. Co.* v. *State,* 47 Neb. 549; 53 Am. St. Rep. 564; *Lawrence* v. *Louisville,* 96 Ky. 594, 49 Am. St. Rep. 309; *State* v. *Switzler,* 143 Mo. 287, 65 Am. St. Rep. 653; *Ross* v. *Lettice,* 134 Ga. 866, 137 Am. St. Rep. 281.

The general rule undoubtedly is that statutes are, *prima facie,* to be construed as prospective and not retrospective in operation. *Thomas* v. *Higgs,* 69 S. E. 654, Ann. Cas. 1912A, 1040; *Lewis* v. *Penn. R. Co.,* 220 Penn. 217, 18 L. R. A. (N. S.) 282.

The following authorities sustain the contention that a law cannot act retrospectively without it is shown clearly on its face that the intention is retroactive. *Boyd* v. *Barringer,* 23 Miss. 269; *Garrett* v. *Beaumont,* 34 Miss. 377; *Grant* v. *I. O. S. of J.,* 97 Miss. 182; *Powers* v. *Wright,* 62 Miss. 35; *Green* v. *Anderson,* 39 Miss. 359; *Carson* v. *Carson,* 40 Miss. 349; *Ingersol* v. *D. & M. R. Co.,* 32 L. R. S. (N. S.) 362; 8 Cyc. 1022; 36 Cyc. 1201, *et seq.*

In the recent case of *Richards* v. *City Lumber Co.,* 101 Miss. 678, in which the comparative negligence statute of 1910, was being considered, we think that this court settled the question conclusively as to the retroactive effect of this act.

REED, J., delivered the opinion of the court.

This is an action brought by appellants, the father and brothers of Earl S. Myers, against appellee, to recover for alleged wrongful death of Myers, resulting from injuries suffered by him while endeavoring to make a coupling of cars on appellee's logging railroad. After all of the testimony had been introduced and both sides had rested, the court granted an instruction directing a verdict for appellee.

Earl S. Myers was employed by appellee, and was at work on a logging train. It is in testimony that he was a brakeman or flagman. Some of the witnesses say that he was a conductor. In discharging the duties of his employment, he undertook to couple a log car to an Illinois Central standard coal car, known as a "gondola," and was crushed between the cars. He died in about thirty minutes after he was injured. Appellants contend that appellee company was negligent in failing to provide a safe roadbed and track for the use of its trains. It was shown that the roadbed at the place where the coupling was attempted was soft and soggy, as the result of water flowing from an artesian well near by and seeping into the track; that certain of the crossties at the same place had been burned from dumping hot cinders from locomotives on them; and that by reason of the condition of the roadbed from the water being on it and the crossties being burned the track would sink beneath the weight of a locomotive or car and render the coupling of cars uncertain and unsafe.

Testimony was introduced by appellee to show that the track of its railroad was in general good condition. There was a clear conflict of the testimony on the question of whether or not the roadbed was in a safe condition and this question, involving the negligence of appellee, should have been submitted to the jury. We also find evidence *pro* and *con* on the questions of negligence by the appellee (1) in its failure to properly load the log

cars, and (2) in using cars whose drawheads and coup-
lers were of different heights.

Counsel for appellee claim that it is not known how
Myers was injured, that only two small bruises were
shown on his body, that no surgeon examined him, and
that he should have been more crushed or cut by the col-
lision of the cars. The facts to us clearly show the cause
of the injury. Myers, a young man, having just reached
majority, in sound health, vigorous and strong, stepped
between two cars to make a coupling. When the cars
came together they did not meet and couple. On one
car was a projecting log. A witness, who was employed
on the same train and was at the time near him, saw him
go in between the cars. When the cars failed to couple,
the witness saw him come out and lie down on a log. The
witness went to him immediately, and found Myers in
great distress and pain, and heard him say he was hurt
and was going to die. Myers was carried to a house
near-by and there in a very short time did die. These
facts are too plain to admit a question as to how de-
ceased was injured. True, the outward showing of the
fatal injury was slight; and true, no one saw him at the
very moment he was struck. Nevertheless, it is beyond
dispute that his death resulted from injury inflicted by
collision in the running of appellee company's cars.

It is contended by the appellee that Earl S. Myers was
a conductor, having the direction and control of the train
which caused the injury resulting in his death; that it
was his duty to couple the cars; and that, even if the
coupling was unsafe, there should be no recovery for in-
jury sustained by reason thereof. Appellee asserts that
the provision in chapter 194 of the Laws of 1908, except-
ing conductors and engineers in charge of dangerous or
unsafe cars or engines, voluntarily operated by them from
the other provision in the statute that "knowledge by
any employee injured of the defective or unsafe char-
acter or condition of any machinery, ways or appliances,

or of the improper loading of cars, shall not be a defense for an action for injury caused thereby,'' is applicable to this case.

We find in the record a clear conflict in the evidence relative to the employment by Myers at the time he was killed. Some of the witnesses call him a flagman or brakeman, and others say that he was a conductor. Some testify that he exercised the authority of a conductor. The proof shows that he was doing the work of a brakeman, coupling cars, when he was injured. Even if the statute excepting conductors should apply in this case, it cannot be said that the proof of his occupying such position is beyond conflict, and that it was unnecessary to submit it to a jury.

We do not see, however, that the statute is applicable to the facts of this case. The exception is as to conductors or engineers operating dangerous or unsafe cars or engines. It is not claimed here that the cars causing the injury were unsafe in themselves, or when used for the purpose for which they were constructed. There were no defects in the cars. They were each good for the purpose for which they were intended. The danger arose from the wrong use of the cars by appellee; that is, in moving and coupling cars whose drawheads and couplers were of different heights, upon a track which was soft and sodden and would sink under the weight of the cars. It is claimed that the roadbed was in an unsafe and defective condition.

Appellee's counsel, in their brief, argue that chapter 215 of the Laws of 1912, providing that the proof of injury inflicted by the running of engines, locomotives or cars shall be *prima facie* evidence of the want of reasonable skill and care, etc., should not apply in this case, because the law was passed after the injury, which was on November 5, 1910. The statute was in effect when this case was tried. We have held recently, and since the case at bar was appealed, that chapter 215 provides only

a rule of evidence, and does not deal with substantive rights, and is applicable in the trial· of all cases after its enactment. *Easterling Lumber Co.* v. *S. W. Pierce,* 64 So. 461. We gather from counsel's brief that the trial court did not apply this statute upon the hearing of this case. This should have been done.

It was error to give the peremptory instruction for appellee. The case should have been submitted to the jury.