DALTON *v.* MADISON.

Dec. 15, 1952

No. 38568 12 Adv. S. 7 61 So. 2d 688

*Denton & Gore,* for appellant.

*Chatham & Walker,* for appellee.

McGEHEE, C. J.

This is a bastardy proceeding instituted before a justice of the peace who issued a warrant for the arrest of the appellant, James Leland Dalton, and upon a hearing of the charge against him for being the father of a child of the unmarried minor, Morene Madison, required him to give a $500 bond for his appearance to await the action of the circuit court.

A declaration was filed in the circuit court and issue joined as to who was the father of the child in question. As a result of the trial in the circuit court, a judgment was rendered against the defendant for the sum of $100 to cover hospital and doctor's bills, and also he was required to pay the sum of $25 per month for the support of the child until it should become eighteen years of age.

Except for defendant himself, all of the witnesses testified that he was the only person that Morene Madison ever dated after April 1950, before the child was born on March 29, 1951. In his testimony he admitted that he was seeing and dating Morene Madison during June of 1950, and in fact he made other admissions showing that he was probably the father of the child, but he contended that one Henry Whittington was also dating the mother as late as June 1950, whereas all of the other testimony was to the effect that the said Henry Whittington went into the Armed Services in April of 1950 and did not return to Mississippi until July 1951. Morene Madison testified positively that the defendant, Dalton, was the father of the child.

In this situation when the jury retired to consider of its verdict, the jurors encountered three members of the local Selective Draft Board who were engaged about their duties in the jury room. The members of this board immediately began vacating the room for the use of the jurors. Thereupon one of the jurors inquired of Mr.

Smith, a member of the draft board, as to when Henry Whittington entered the service. Mr. Smith replied that he did not know but that he would look at his records, and that he did look and "could not find his card." Another member of the board assisted in the search and Mr. Smith found that the Whittington inquired about was not registered, and so reported to the inquiring juror. They were unable to furnish the juror the requested information. This is all that transpired before the members of the draft board retired from the jury room, and whereupon the jury began its deliberations in the absence of these third persons and reached the verdict hereinbefore mentioned.

There are eight assignments of error on this appeal, but the first six of them are expressly waived in the brief of counsel for the appellant as being without merit. ■■ ■ The last two assignments relate (1), to the alleged error of the court in not entering a mistrial upon the motion of the defendant, which was filed in that behalf after the jury had returned its verdict and had been discharged; and (2), in failing to sustain a motion for a new trial on the same ground—the jurors had sought this additional information from third persons after having retired to consider its verdict. We do not think these assignments of error are well taken for the reason (1), that the jurors did not obtain the information sought for, and (2), that the inability of the members of the draft board to ascertain when, if at all, Henry Whittington had been inducted into the service was more calculated to favor the defendant's contention than to refute it.

The appellant relies for a reversal on numerous decisions of this Court and the views of text writers to the effect that the jury, when it retires to consider its verdict, should be left absolutely free from any and all outside influence; that the verdict should be that of twelve men, and not that of twelve men and other persons. But we are of the opinion that the question presented here is controlled by the cases of Welford v. Havard, 127 Miss.

88, 89 So. 812; 7· Am. Jur., Bastards, Sec. 81, p. 680; Easterling Lumber Co. v. Pierce, 106 Miss. 672, 64 So. 461; Graves v. Monet, 7 Smedes. & M. 45; Brookhaven Lumber and Mfg. Co. v. Illinois Central R. R. Co., 68 Miss. 432, 10 So. 66; Pepper v. State, 200 Miss. 891, 27 So. 2d 842; Am. Jur., Vol. 39, New Trial, Sec. 101, p. 114; and by Rule 11 of the Rules of the Supreme Court of Mississippi, and which rule is to the effect that "No judgment shall be reversed on the ground of . . . the improper admission or exclusion of evidence, . . . unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice."

However, aside from Rule 11, above quoted from, the rule to be deduced from the decisions and the text relied upon by the appellee is that while a jury should be ·kept free from all outside influence, and the trial judge should use due care to see that this is accomplished, a verdict will not be set aside unless it clearly appears that the jurors have been corrupted or influenced by any outside or extraneous matter which is not a part of the evidence introduced upon the trial; and that a mere possibility that the jurors may have been influenced by outside or extraneous matter or statements is not sufficient to justify the setting aside of a verdict. We do not think that it was reasonably probable that the defendant could have been prejudiced by the mere failure of the members of · the draft board to find and furnish the information requested of them. On the contrary, it was more reasonable that the failure of the members of the draft board to find where Henry Whittington had been registered or to find his card showing the date when he entered the service, if at all, would have tended to cause some of the jurors to think that this fact would indicate that the defendant was correct in contending that Whittington was dating the girl as late as June of 1950 and that therefore he could have been the father of the child in question. At any rate, we are unable to see how defendant

could have been prejudiced by what occurred between the inquiring juror and the members of the draft board. We are, therefore, of the opinion that the trial judge did not commit error in declining to enter a mistrial or in overruling the motion for a new trial.

Affirmed.

*Hall, Kyle, Holmes,* and *Ethridge, JJ.,* concur.